SUCESIÓN MARÍA RESTO NÚÑEZ, demandante y recurrida, *v.* VÍCTOR ORTIZ LEBRÓN, demandado y recurrido; COLEGIO DE ABOGADOS DE PUERTO RICO, FONDO DE FIANZA NOTARIAL, tercero demandado y peticionario.

*Número:* CC-2000-1034     *Resuelto:* 27 de agosto de 2002

804

*Israel Pacheco Acevedo* y *Andrés L. Córdova,* abogados de la parte peticionaria; *Pablo Lugo Lebrón,* abogado de la parte recurrida.

PER CURIAM: Nos corresponde determinar el alcance de la fianza notarial prestada por el Colegio de Abogados de Puerto Rico a favor de un notario en casos en que existe más de una reclamación contra el mismo notario. En particular, debemos resolver si dicha fianza se limita a responder por un máximo de veinte mil dólares, sin importar el año en que se presenten las reclamaciones y ocurran los hechos.

I

El 24 de marzo de 1995 la sucesión de María Esther Resto presentó una demanda en el Tribunal de Primera Instancia, Sala Superior de Humacao en Fajardo, sobre nulidad de testamento contra Víctor Ortiz Lebrón, quien había sido nombrado en el testamento de la causante como su único y universal heredero. En dicha demanda se impugnó el testamento abierto en cuestión otorgado mediante escritura pública el 17 de abril de 1991, por haber comparecido en éste como testigo instrumental una empleada del notario autorizante, Lcdo. Raúl Yumet Breindernbach. El demandado trajo como terceros demandados al referido notario y al Colegio de Abogados de Puerto Rico (Colegio), como fiador del notario. El Colegio contestó la demanda y aceptó que, de acuerdo con el Fondo de Fianza Notarial y en virtud del contrato de fianza, venía obligado a responder por los daños alegados hasta un monto de $20,000 solamente, por ser ésta la cantidad máxima establecida en el referido contrato de fianza. El 4 de febrero de 1997 el Tribunal de Primera Instancia dictó una sentencia sumaria parcial, mediante la cual declaró nulo el testamento en cuestión por el incumplimiento del notario con las formalidades legales requeridas respecto a los testigos. Se dejó pendiente la adjudicación de los daños correspondientes.

El 7 de marzo de 1997 se presentó, por otros demandantes, una segunda demanda contra el mismo notario. Esta vez los demandantes reclamaron los daños y perjuicios ocasionados por no haberse presentado en el Registro de la Propiedad la Escritura Pública Núm. 16 de 23 de abril de 1988, otorgada ante dicho notario. El Colegio compareció, aceptando ser el fiador del notario. Sin embargo, adujo que el máximo de la fianza por la cual respondería sería la suma de $20,000 por todas las distintas reclamaciones contra el notario Yumet Breindernbach que aún estaban pendientes ante los tribunales. El 23 de febrero de 1999 el Tribunal de Primera Instancia declaró con lugar la segunda demanda y ordenó al Colegio a pagar hasta un máximo de $20,000 por los daños ocasionados por el notario, y le impuso a éste personalmente una indemnización adicional de $44,710.19.

Posteriormente, el 4 de octubre de 1999 el Tribunal de Primera Instancia emitió una sentencia en el primer caso presentado contra el notario, mediante la cual declaró con lugar la demanda contra tercero y les concedió a los demandantes una indemnización de $89,000. Como parte de la sentencia, ordenó al Colegio a pagar a los demandantes la suma máxima de $20,000 atribuible a éste.

Inconforme con dicha determinación, el Colegio acudió al Tribunal de Circuito de Apelaciones. Alegó allí que la fianza notarial del Colegio se limitaba a la cantidad máxima de $20,000, sin importar el año en que se presentara la reclamación u ocurrieran los hechos. Adujo que cuando surgen varias reclamaciones contra un mismo notario, incluso sobre eventos ocurridos en distintos años, la fianza deberá cubrir a prorrata a todos los reclamantes y a sus respectivas reclamaciones hasta la cubierta máxima de $20,000. El foro apelativo no aceptó la contención del Colegio y confirmó la impugnada determinación del foro de instancia. Concluyó que éste actuó correctamente al impo-

nerle al Colegio el pago de la fianza por $20,000. Resolvió que, conforme a las disposiciones de dicha fianza notarial, el Colegio era responsable solidariamente con el notario público hasta un máximo de $20,000 por los daños y perjuicios causados por acciones u omisiones del notario en el ejercicio de sus funciones, y que como la fianza notarial debía ser renovada anualmente, ésta cubría y respondía separadamente por el máximo de la fianza por los actos u omisiones del notario que ocasionaren daños por cada año en que se había prestado la fianza.

El Colegio entonces acudió oportunamente ante nos mediante un recurso de *certiorari* y alegó el señalamiento de error siguiente:

> *Erró el Tribunal de Circuito de Apelaciones al confirmar la sentencia del Tribunal de Primera Instancia, la cual le impone una obligación contractual al fiador Colegio de Abogados en exceso a la cubierta establecida en el contrato de fianza notarial vigente.* Petición de *certiorari*, pág. 9.

El 26 de enero de 2001 expedimos el auto de *certiorari* solicitado por el Colegio, a los fines de revisar la sentencia dictada por el foro apelativo el 9 de noviembre de 2000. Le señalamos al Colegio que como parte de su alegato debía informarnos, con respecto a los últimos cinco años, si han existido otras instancias de más de una reclamación contra una fianza notarial, a los fines de precisar si la situación del caso de autos era única o si era susceptible de repetirse. También le requerimos informarnos sobre el estado financiero del Fondo de Fianza Notarial durante los últimos cinco años, detallando los desembolsos de dicho Fondo en cada de unos de esos años y las reservas. Luego de que el Colegio presentara la información solicitada, el 6 de abril de 2001 acogimos su recurso de *certiorari* como su alegato. El 10 de mayo de 2001 los recurridos presentaron el suyo. Con la comparecencia de ambas partes, procedemos a resolver.

## II

Como se sabe, en virtud de la figura contractual de la fianza, una persona se obliga a pagar o cumplir por un tercero, en el caso de no hacerlo éste. Art. 1721 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4871. La vida de la fianza depende y está condicionada totalmente a que exista una obligación principal. *G.E. C. & L. v. So. T. & O. Dist.*, 132 D.P.R. 808, 814 (1993). En cuanto a su naturaleza, el contrato de fianza tiene tres características determinantes: (1) la obligación contraída por la fianza es accesoria y subsidiaria; (2) es unilateral porque puede establecerse sin intervención del deudor, y aún del acreedor en cuyo favor se constituye, y (3) el fiador es persona distinta del fiado, porque nadie puede ser fiador personalmente de sí mismo. *Caribe Lumber v. Inter-Am. Builders*, 101 D.P.R. 458 (1973).

El contrato de fianza no se considera un contrato de seguro, por lo cual no se incorporó en el Código de Seguros de Puerto Rico. Se regula más bien por el Código Civil del país, como figura jurídica independiente y separada del contrato de seguro. En un contrato de fianza, el fiador se compromete a pagar al acreedor en caso de que el deudor incumpla con la deuda subyacente. Sin embargo, a diferencia del contrato de seguro, en la fianza el fiador puede repetir contra el deudor, subrogándose en la posición del acreedor, una vez dicho fiador haya cubierto la deuda. Art. 1738 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4912. A cambio de este derecho, el fiador cobra una prima más baja por la fianza que la que cobraría una aseguradora por un seguro. *Caguas Plumbing v. Continental Const. Corp.*, 155 D.P.R. 744 (2001); *Caribe Lumber v. Inter-Am. Builders*, supra.

El Código Civil dispone que la fianza no se presume, que debe ser expresa y que no puede extenderse a más de lo contenido en ella. Véase Art. 1726 del Código

Civil de Puerto Rico, 31 L.P.R.A. sec. 4876. Si bien nuestra jurisprudencia ha resuelto que un contrato de fianza ha de interpretarse liberalmente, de modo que favorezca las reclamaciones de los terceros beneficiados, dicha interpretación no puede abstraerse de la verdadera intención de las partes. Así, debe atenderse en primer plano el texto del contrato, visto en su totalidad y de acuerdo con las reglas de hermenéutica dispuestas en el Código Civil. *Caguas Plumbing v. Continental Const. Corp.*, supra.

■ La fianza puede ser convencional, legal o judicial, gratuita o a título oneroso. Art. 1722 del Código Civil, 31 L.P.R.A. sec. 4872. La Ley Notarial de 1987 (4 L.P.R.A. sec. 2001 *et seq.)* establece como uno de los requisitos para ejercer el notariado en Puerto Rico la prestación de una fianza. El Art. 7 de la referida ley[1] establece lo siguiente:

> Ninguna persona autorizada para practicar la profesión notarial en Puerto Rico podrá ejercerla sin tener prestada y vigente una fianza por una suma no menor de quince mil (15,000) dólares para responder del buen desempeño de las funciones de su cargo y de los daños y perjuicios que por acción u omisión cause en el ejercicio de su ministerio. El límite de esta fianza no menoscaba los derechos del Estado Libre Asociado de Puerto Rico ni de las personas naturales o jurídicas en virtud de las disposiciones de la sec. 5141 del Título 31 o de cualquier otra disposición legal o jurisprudencial. La fianza del notario deberá ser hipotecaria o prestada por una compañía de seguros, autorizada para hacer negocios en Puerto Rico, *o por el Colegio de Abogados de Puerto Rico, al que se autoriza a cobrar por la prestación de esa garantía, la cantidad que estime razonable, según se dispone en la ley.*
>
> La fianza deberá ser renovada anualmente y aprobada por el Tribunal Supremo de Puerto Rico, el que pasará sobre su suficiencia en cuanto a las hipotecarias, las cuales deberán inscribirse en el registro de la propiedad correspondiente, antes de su aprobación final.
>
> La fianza responderá preferentemente de las cantidades que dejare de abonar el notario al Estado Libre Asociado por concepto de sellos de Rentas Internas, notariales y demás exi-

---

[1] 4 L.P.R.A. sec. 2011.

gidos por ley, por encuadernación de protocolos y cualquier otro gasto necesario incurrido que indique el Director de Inspección de Notarías para poder llevar a cabo la inspección de notarios y su aprobación. Este podrá proceder directamente contra la fianza, una vez demostrados los gastos, para hacer efectivas las obligaciones.

*Si en una reclamación judicial que se haga contra un notario se adjudica al reclamante el todo o parte de la fianza, aquél no podrá seguir ejerciendo hasta tanto preste nueva fianza.*

Todas las cantidades que recaude el Colegio de Abogados por la prestación de esa garantía ingresaran en un fondo designado "Fondo Especial" por conceptos de primas de la fianza notarial, el cual será administrado en la forma que se establece en la sec. 2141 de este título. (Énfasis nuestro.)

■ A su vez, el Fondo Especial de la fianza notarial estará gobernado por la Junta de Gobierno del Colegio de Abogados. La Junta tendrá las obligaciones siguientes: (1) establecer y mantener una reserva que sea suficiente para responder de cualquier reclamación legítima contra el Fondo Especial como consecuencia de la fianza notarial que garantice el Colegio y para cubrir los gastos necesarios para administrar, operar y proteger el Fondo Especial; (2) custodiar e invertir en forma prudente el balance del Fondo Especial, descontada la cantidad de reserva requerida por el inciso anterior. La cantidad correspondiente a este balance y los intereses que devengue podrán utilizarse o invertirse para varios propósitos que establece el propio Art. 79 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2141.

■ Es evidente que el contrato de fianza notarial debe clasificarse como una fianza legal, toda vez que es la propia Ley Notarial de Puerto Rico la que la establece como uno de los requisitos para ejercer el notariado en Puerto Rico. Las fianzas legales se rigen en primera instancia por la ley que las crean y, en su defecto, por las disposiciones del Código Civil acerca de la fianza convencional en lo que les sea aplicable. Véase J.A. Cuevas Sega-

rra y A. Román García, *Los contratos especiales: Puerto Rico y España*, San Juan, Pubs. J.T.S., 1998, pág. 274.

▉▉▉▉▉ Este Tribunal ha establecido que la fianza notarial tiene el preeminente propósito público de responder por los daños y perjuicios que cause un notario en sus funciones o por el incumplimiento de sus deberes ministeriales como la cancelación de sellos. Asimismo, hemos reconocido que aunque la fianza notarial tiene un límite económico, aún así las personas afectadas por los actos impropios de los notarios podrán reclamar una suma mayor si los daños fuesen mayores al límite de la fianza notarial. Bajo ninguna circunstancia queda menoscabado el derecho de una parte afectada por la negligencia o incompetencia de un notario a reclamar por una suma que exceda el máximo garantizado mediante la fianza notarial. *In re Ribas Dominicci I*, 131 D.P.R. 491, 497 (1992). También hemos señalado que esta fianza responde por los sellos de rentas internas o notariales y por los gastos necesarios para proteger el Protocolo del notario. "Cabe señalar que si por alguna razón parte de la fianza es adjudicada en una reclamación, el notario no podrá continuar ejerciendo la profesión hasta que restituya la porción de la fianza que se ha deducido." Íd., pág. 498.

▉▉▉▉▉ En la Exposición de Motivos de la ley,[2] que aumentó la fianza notarial del límite original de $2,500 al límite de $15,000, se hizo claro que existía un alto interés público en cuanto al desempeño competente y responsable del ministerio notarial y en cuanto a la responsabilidad de proteger al Estado Libre Asociado de Puerto Rico, al pueblo y a los propios abogados de las consecuencias de la impericia profesional en el cumplimiento de las obligaciones de los notarios.

A la luz de la normativa antes reseñada, pasemos a examinar los hechos del caso de autos.

---

[2] Ley Núm. 118 de 12 de julio de 1986, Leyes Puerto Rico, pág. 391.

# III

El Colegio plantea que la controversia jurídica en el caso de autos gira esencialmente en torno a la calificación y alcance del contrato de fianza notarial otorgado entre el Colegio (fiador) y el notario (fiado). Aduce que el contrato de fianza legal otorgado aquí era uno solo, que obliga al fiador hasta un máximo de $20,000 durante la vida del contrato, siendo el pago del cargo anual de $90 que hace el notario-fiado para mantener vigente la fianza, una obligación de tracto sucesivo o continuo.

· Tanto el Tribunal de Primera Instancia como el Tribunal de Circuito de Apelaciones concluyeron que la relación contractual era anual, suscribiéndose un contrato de fianza legal de año en año entre las partes en virtud del pago de la prima hecha por el notario para mantener vigente la fianza requerida por ley. No erraron los tribunales a quo al resolver como lo hicieron. Veamos.

El contrato de fianza notarial que suscriben el Colegio y los notarios establece lo siguiente:

> ... el COLEGIO DE ABOGADOS DE PUERTO RICO, como FIADOR, nos obligamos solidariamente con el ESTADO LIBRE ASOCIADO DE PUERTO RICO y LAS PERSONAS NATURALES O JURÍDICAS que corresponda, a pagar hasta un máximo de VEINTE MIL DOLARES ($20,000.00) en moneda de curso legal de los Estados Unidos de América, por concepto de los daños y perjuicios causados por acciones u omisiones del notario público arriba mencionado en el ejercicio de las funciones de dicho cargo ....[3]

Examinado el referido contrato que obra en autos en su totalidad, observamos que éste es por el término de un año. La relación contractual que existe entre el

---

[3] Véase Apéndice IX, pág. 38. Debemos señalar que aunque la Ley Notarial de Puerto Rico establece en su Art. 7 (4 L.P.R.A. sec. 2011) como uno de los requisitos para ejercer el notariado una fianza notarial mínima de $15,000, el Colegio le ofrece a los notarios una fianza notarial con una cubierta máxima de $20,000.

notario y el Colegio es la de fiador solidario y fiado. El notario paga una prima anual de $90, y de esta manera renueva el contrato de fianza notarial con el Colegio cada año, por lo que la referida fianza cubre y responde por los actos y omisiones del notario del año en que se presta la fianza. El propósito de la renovación anual del contrato de fianza notarial es evidente, pues dicha fianza no puede extenderse ni tener cubierta por más tiempo que el período de un año para la cual fue prestada. De ahí que se requiera por la propia Ley Notarial de Puerto Rico que si la fianza es adjudicada en una reclamación judicial, el notario deberá restituirla para continuar la práctica de la notaría. De lo anterior resulta claro que si las actuaciones u omisiones negligentes del notario ocurren en diferentes años bajo contratos distintos, la fianza notarial viene a responder hasta un límite de $20,000 según establece el propio contrato para cada año en que ocurrieron los hechos que dieron base a la reclamación. En el caso de autos, la fianza vigente al 17 de abril de 1991, fecha en que se otorgó ante el notario la escritura testamentaria anulada, y la fianza vigente para el 23 de abril de 1988, fecha en que se otorgó la escritura que no fue presentada en el Registro de la Propiedad, eran fianzas distintas que cubrían distintos años.

Esta interpretación es cónsona con nuestra jurisprudencia, que ha establecido que hoy el contrato de fianza se interpreta liberalmente para expandir la protección de terceros beneficiados. Véase, a esos efectos, *Caguas Plumbing v. Continental Const. Corp.*, supra. Más importante aún, esta interpretación es la única que armoniza plenamente con el importantísimo interés público, reconocido antes por este Foro y por la propia Asamblea Legislativa de Puerto Rico, de ofrecerle una protección significativa segura al público contra la impericia profesional de los

notarios. Cualquiera otra interpretación atentaría contra la indispensable confianza de la gente en la labor notarial.

El Colegio de Abogados ha alegado ante nos que el responder por múltiples reclamaciones contra un mismo notario hasta el monto de la cubierta en cada reclamación, repercutiría de manera significativa sobre los recursos económicos no tan sólo del Fondo de Fianza Notarial, sino del propio Colegio. Sin embargo, nos admite en su petición de *certiorari* que esta es la primera vez que se enfrenta a una situación de reclamaciones múltiples contra un mismo notario por hechos ocurridos en diferentes años. También a esos efectos, en la información que nos presentó como parte de su alegato, el Colegio solamente señala como pendiente ante los tribunales un caso de un notario que tiene varias reclamaciones judiciales por instrumentos públicos otorgados en dos años distintos. Por los datos suministrados por el propio Colegio, pues, no parece que sea de ningún modo común o recurrente el tipo de situación que tenemos ante nos en el caso de autos, sobre todo si se considera que existen en Puerto Rico actualmente 7,257 notarios activos en la profesión, según información ofrecida por la Oficina de Inspección de Notarías. No está justificado, pues, el referido temor del Colegio.

Más aún, esta determinación nuestra se apoya también en la propia información suministrada por el Colegio sobre los estados financieros auditados del Fondo de Fianza Notarial a partir de 1994 hasta 1999. De un examen de éstos surge que los ingresos por primas durante 1999 fueron $612,534, mientras que los desembolsos por reclamaciones judiciales ascendieron a $75,558, lo que representa aproximadamente un 12.34% de dichos ingresos solamente. Durante 1998, los ingresos por primas llegaron a $555,795, mientras que los desembolsos por reclamaciones judiciales ascendieron a $75,870, lo que representa aproximadamente un 13.65%. Más aún, para 1997 las reclamaciones judiciales solamente representaron aproximadamente el

1.98% del ingreso generado por el cobro de primas. De un análisis de los referidos estados financieros no surge que sea oneroso para el Fondo de Fianza Notarial el que la fianza responda hasta un máximo de $20,000 por reclamaciones judiciales contra un mismo notario cada año.

No debemos perder de perspectiva que el propósito primordial de la fianza notarial, como establece la propia Ley Notarial de Puerto Rico, es proteger a las personas de los daños y perjuicios que pueda causarle un notario en el ejercicio de sus funciones públicas. La interpretación que hacemos hoy del contrato de fianza notarial entre el Colegio y un notario es la manera como queda mejor protegido ese importante interés público, del cual somos fieles veladores. Los estados financieros referidos reflejan que el Fondo de Fianza Notarial ha desembolsado a través de los años cientos de miles de dólares en otros fines que no son la indemnización de los daños ocasionados por la impericia notarial. No tenemos la ocasión aquí para juzgar la validez o procedencia de esos otros desembolsos. Nos limitamos por ahora a reiterar que el propósito primordial del Fondo referido es la protección de las personas afectadas por los actos impropios de los notarios, según lo dispuesto en el Art. 7 de la Ley Notarial de Puerto Rico, *supra.*

En conclusión, la fianza notarial prestada por el Colegio a favor de un notario responde hasta el límite que se establece en el contrato de fianza, en este caso $20,000, sin importar el año en que se presente la reclamación u ocurran los hechos. En el caso de autos se trataba de dos fianzas distintas, las que respondían por las diversas reclamaciones judiciales que tuvieron origen durante dichos años. No erraron los tribunales apelados al ordenarle al Colegio el pago de la suma máxima de $20,000 por cada caso, ya que los daños excedían la fianza notarial prestada para esos años.

Por los fundamentos antes expuestos, *se dictará sentencia para confirmar la dictada por el Tribunal de Circuito*

*de Apelaciones el 9 de noviembre de 2000, que a su vez confirmó la dictada por el Tribunal de Primera Instancia el 4 de octubre de 1999.*

El Juez Asociado Señor Rivera Pérez concurrió con el resultado sin opinión escrita.