EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José A. Ortiz Rolón<br><br>Recurrido<br><br>v.<br><br>ARMANDO SOLER AUTO SALES, INC.;<br>Presidente Xavier Ayala Cruz HVPH Motor<br>Corp. d/b/a Lexus De San Juan;<br>Scotiabank De Puerto Rico; MAPFRE<br><br>Peticionarios | Certiorari<br><br>2019 TSPR 109<br><br>202 DPR ____ |

Número del Caso: CC-2017-76

Fecha: 4 de junio de 2019

Tribunal de Apelaciones:

　　Región Judicial de Bayamón y Aibonito – Panel VI

Abogados de la parte peticionaria:

　　Lcda. Arlene Rivera Benítez
　　Lcda. Elaine Arrufat Berastaín
　　Lcda. Adaliz Maldonado Solís

Abogada de la parte recurrida:

　　Lcda. Brunilda M. Figueroa Nater

Materia: Derecho Administrativo: Facultad de DACo para conceder un remedio a favor de una parte querellada que no es un consumidor. Reclamaciones cubiertas bajo la fianza de concesionarios de vehículos de motor.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

José A. Ortiz Rolón

    Recurrido

       v.

ARMANDO SOLER AUTO SALES, INC.; Presidente Xavier Ayala Cruz HVPH Motor Corp. d/b/a Lexus De San Juan; Scotiabank De Puerto Rico; MAPFRE

    Peticionarios

CC-2017-0076

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 4 de junio de 2019.

Un concesionario de vehículos de motor incurre en una práctica engañosa al vender un vehículo de motor usado. Como resultado, el Departamento de Asuntos del Consumidor (DACo) ordena la restitución de todas las prestaciones. ¿Puede el DACo ordenar a una parte querellada a responderle a otra parte querellada que no es un consumidor? De ser así, ¿responde la fianza legal del concesionario de vehículos de motor si el concesionario no le devuelve a la entidad financiera el monto que pagó para facilitar la venta?

I

El 30 de noviembre de 2013 el Sr. José A. Ortiz

Rolón suscribió un *Contrato de venta al por menor a plazos y pagaré* con Armando Soler Auto Sales, Inc. (Armando Soler), mediante el cual adquirió un vehículo de motor usado. Para facilitar el financiamiento, Armando Soler cedió a Scotiabank de Puerto Rico (Scotiabank) sus derechos bajo el contrato.[1]

El 8 de diciembre de 2014 el señor Ortiz Rolón presentó una querella ante el DACo contra Armando Soler, su presidente Xavier Ayala Cruz, HVPH Motor Corp. h/n/c/ Lexus de San Juan, MAPFRE/PRAICO Insurance Co. (MAPFRE), como fiadora de Armando Soler, y Scotiabank de Puerto Rico (Scotiabank). Indicó que luego de que compró el vehículo se enteró de que había sido declarado pérdida total como consecuencia de una inundación, lo cual no le fue informado por Armando Soler. Además, alegó que el historial de servicio del vehículo evidenció que el odómetro fue alterado para reflejar un millaje menor al real.

Luego de una vista administrativa,[2] el DACo emitió una *Resolución* en la que declaró nulo el contrato de compraventa y ordenó a las partes querelladas a restituir, solidariamente, al señor Ortiz Rolón el pronto pago y las mensualidades pagadas, así como resarcir las angustias que

---

[1] Según el *Contrato de venta al por menor a plazos y pagaré*, el precio de venta fue $21,995.00 y la cantidad a ser financiada fue $22,720.00. Este fue emitido al amparo de la Ley de Ventas a Plazos y Compañías de Financiamiento, Ley Núm. 68 de 19 de junio de 1964, 10 LPRA sec. 731, et seq.

[2] Armando Soler no compareció al procedimiento administrativo ante el DACo. En su Alegato ante el Tribunal de Apelaciones, el señor Ortiz Rolón indicó que Armando Soler Auto Sales, Inc. estaba en quiebra. *Alegato José A. Ortiz Rolón*, Autos del TA. No obstante, no hay prueba de ello en el expediente.

sufrió, valoradas en $10,000.00, y pagar la suma de $1,000.00 por concepto de honorarios de abogado.[3] La agencia también impuso responsabilidad solidaria entre Armando Soler y MAPFRE frente a Scotiabank por los gastos y pérdidas sufridas a consecuencia de la nulidad del contrato de compraventa. Por último, ordenó a Scotiabank a tomar las medidas necesarias para informar a las agencias crediticias la eliminación de las anotaciones correspondientes relacionadas con el contrato de compraventa que se declaró nulo.

Así las cosas, Scotiabank y MAPFRE solicitaron reconsideración. Ambas señalaron que la suma que se concedió al señor Ortiz Rolón por daños era exagerada e incongruente con la suma originalmente estimada por el propio foro administrativo. Además, MAPFRE argumentó que -como fiadora de Armando Soler- solo respondía subsidiariamente frente al señor Ortiz Rolón y no frente a Scotiabank. Por su parte, Scotiabank arguyó que su responsabilidad se limitaba a devolver las prestaciones a su estado original, ya que no tuvo nada que ver con la conducta del vendedor del vehículo de motor. Por ende, entendió improcedente responsabilizarle de forma solidaria junto a las otras partes querelladas por las cuantías concedidas al señor Ortiz Rolón por concepto de daños y honorarios de abogado.

---

[3] El Departamento de Asuntos del Consumidor (DACo) fundamentó su determinación en la Regla 22H del Reglamento contra prácticas y anuncios engañosos, Reglamento Núm. 7932 de 15 de octubre de 2010, y la Regla 31 del Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 de 6 de junio de 2006.

El DACo acogió las mociones de reconsideración, pero no dispuso de ellas dentro del término de 90 días. No obstante, luego emitió una *Resolución Nunc Pro Tunc,* en la que modificó la determinación únicamente para corregir la suma otorgada por concepto de angustias mentales de $10,000.00 a $5,000.00.[4]

MAPFRE y Scotiabank presentaron sendos recursos de revisión judicial ante el Tribunal de Apelaciones. MAPFRE señaló que el DACo erró al: (1) declarar nulo el contrato de compraventa, (2) imponerle responsabilidad solidaria no obstante el carácter subsidiario de la fianza, (3) conceder cuantías exageradas y desproporcionadas por concepto de daños y angustias mentales en contravención a la prueba desfilada, y (4) imponer el pago de honorarios de abogado. Por su parte, Scotiabank señaló que el DACo erró al imponerle responsabilidad solidaria en cuanto a la compensación en daños y perjuicios y el pago del pronto pago. Además, impugnó las cuantías concedidas por no encontrar apoyo en la prueba.

El Tribunal de Apelaciones consolidó ambos recursos y emitió una *Sentencia* en la que modificó la *Resolución* del DACo a los efectos de resolver que MAPFRE no queda obligada de forma alguna frente a Scotiabank. Fundamentó lo anterior en el contenido del contrato de fianza, el cual establece que la fianza solo responderá por

---

[4] El DACo aclaró que en la *Resolución* determinó que la cuantía por angustias mentales sería $ 5,000. Ahora bien, al emitir la orden cometió un error de forma e indicó que serían $ 10,000. *Resolución Nunc Pro Tunc*, Apéndice, pág. 47.

reclamaciones de compradores de vehículos de motor. Por otro lado, el foro intermedio resolvió que el DACo erró al imponerle responsabilidad solidaria a MAPFRE, ya que esta solo responde de forma subsidiaria frente al señor Ortiz Rolón.

En torno a los señalamientos de error de Scotiabank, el foro apelativo resolvió que el banco no responde por los daños ocasionados al señor Ortiz Rolón y su obligación se circunscribe a la restitución de su parte en las prestaciones del contrato de compraventa. Así modificada, confirmó la *Resolución*. Scotiabank y el DACo solicitaron reconsideración, sin éxito.

Inconforme, Scotiabank presentó un recurso de *Certiorari* ante este Tribunal. Señaló que el Tribunal de Apelaciones erró al resolver que MAPFRE no responde de forma alguna frente a Scotiabank por los gastos y pérdidas ocasionadas por la nulidad del contrato de compraventa, a pesar de la existencia de una fianza legal a favor del concesionario. Según Scotiabank, el foro recurrido no consideró que la disposición reglamentaria que exige la fianza en cuestión se considera parte del contrato de fianza y que dicha disposición debe prevalecer sobre cualquier cláusula contractual inconsistente con sus términos.

Luego de expedir el recurso en reconsideración, MAPFRE presentó su alegato. En primer lugar, cuestionó la facultad del DACo para conceder un remedio a una entidad de financiamiento cuando el fin de su legislación creadora

y de la reglamentación aplicable es proteger a los consumidores, no a las instituciones financieras. Por otro lado, sostuvo que el contrato de fianza es claro en torno a que solo podrán reclamar contra ella personas a quienes Armando Soler vendió vehículos de motor, lo cual excluye a instituciones financieras como Scotiabank. Por último, añadió que el contrato de fianza fue avalado por el DTOP por lo que se debe presumir que cumple con las disposiciones reglamentarias aplicables.

II

A. Facultades del Departamento de Asuntos del Consumidor

El DACo cuenta con un personal profesional y técnico altamente competente encargado de vindicar los derechos del consumidor de una forma agresiva y firme. Ayala Hernández v. Consejo Titulares, 190 DPR 547, 563 (2014); Exposición de Motivos de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 del 23 de abril de 1973, 3 LPRA sec. 341b (1973 Leyes de Puerto Rico 17). Por esta razón, se estableció en la agencia una estructura de adjudicación administrativa "con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho". Íd. sec. 341e(d); véase Amieiro González v. Pinnacle Real Estate Home Team, 173 DPR 363, 372 (2008). Así, el legislador le responsabilizó con velar por el cumplimiento de todas las leyes relacionadas con los derechos de los consumidores. 3 LPRA sec. 341e(d).

Como parte del cumplimiento con su misión, la Ley Orgánica del Departamento de Asuntos del Consumidor le facultó a "[r]eglamentar y fiscalizar los anuncios y las prácticas engañosas en el comercio". 3 LPRA sec. 341e(j). En ejercicio de esta autoridad, la agencia promulgó el Reglamento contra prácticas y anuncios engañosos, Reglamento Núm. 7932 del Departamento de Asuntos del Consumidor de 15 de octubre de 2010.[5] Véase Costa, Piovanetti v. Caguas Expressway, 149 DPR 881, 887 (1999).

El Reglamento Núm. 7932, establecía que un comerciante no podrá negar devolver el precio pagado por el consumidor cuando el bien vendido: (1) adolece de algún defecto; (2) no cumple con las representaciones del vendedor que motivaron la compra; (3) no sirve para el propósito para el cual se adquirió, o (4) cuando se incumple con ese Reglamento durante el proceso de contratación o durante la vigencia de la garantía. Reglamento Núm. 7932, supra, Regla 22(H), pág. 30.

Por otro lado, mediante la aprobación de la Ley de Garantías de Vehículos de Motor, Ley Núm. 7 de 24 de septiembre de 1979, 10 LPRA sec. 2051 et seq., el legislador le encomendó al DACo la tarea específica de proteger a los consumidores de vehículos de motor frente a los intereses del vendedor, distribuidor y manufacturero. Véase 10 LPRA secs. 2052, 2053 y 2063; Pérez v. VPH Motors

---

[5] El Reglamento contra prácticas y anuncios engañosos, Reglamento Núm. 8599 de 20 de mayo de 2015 derogó el Reglamento Núm. 7932, el cual estuvo vigente durante los hechos que provocaron el recurso de autos.

Corp., 152 DPR 475, 487 (2000); véase además Exposición de Motivos de la Ley Núm. 273-2003.

En virtud de esa ley, el DACo aprobó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 del Departamento de Asuntos del Consumidor de 6 de junio de 2006, el cual procuró prevenir las prácticas ilícitas en las ventas de vehículos de motor y proteger a los consumidores -tanto de vehículos de motor nuevos como usados- al exigir que estos sean seguros y sirvan los propósitos para los cuales fueron adquiridos. Véase Polanco v. Cacique Motors, 165 DPR 156, 163-164 (2005).

Entre otras cosas, el artículo 29.3 de este Reglamento faculta al DACo a ordenar la resolución de un contrato de compraventa si el vendedor no corrige los defectos que sufre el vehículo de motor usado en aquellos casos en que tuvo oportunidad razonable para hacerlo. Reglamento Núm. 7159, supra, Art. 29.3, págs. 29-30.

B. El contrato de fianza

La fianza es un acuerdo de garantía personal mediante el cual una parte se compromete a cumplir una obligación de otro, en caso de este no hacerlo. Art. 1721 del Código Civil, 31 LPRA sec. 4871; Andamios de P.R. v. JPH Contractors, Corp., 179 DPR 503, 511 (2010). El interés que persigue la fianza es evidente: ofrecer un patrimonio adicional al responsable original para así aumentar la probabilidad de que el acreedor vea satisfecho su interés. United Surety v. Registradora, 192 DPR 187, 203 (2015).

El contrato de fianza tiene tres características determinantes: (1) la obligación que recoge es accesoria y subsidiaria a la del fiado; (2) es unilateral porque puede establecerse sin intervención del fiado o inclusive del acreedor a favor de quien se constituye, y (3) el fiador es persona distinta del fiado, porque nadie puede ser fiador personalmente de sí mismo. Sucn. María Resto v. Ortiz, 157 DPR 803, 810 (2002). Del mismo modo, los términos de la fianza no se presumen, deben ser expresos, y pueden extender la cobertura de la fianza a menos, pero nunca a más que la obligación principal. Arts. 1725 y 1726 del Código Civil, 31 LPRA secs. 4875-4876.

El Código Civil reconoce tres clases de fianza: convencional, legal y judicial. Art. 1722 del Código Civil, 31 LPRA sec. 4872. La diferencia entre cada una estriba en el origen de la obligación de celebrar un contrato de fianza. J. Alventosa del Río, La Fianza: Ámbito de Responsabilidad, Granada, Ed. Comares, 1988, pág. 60. En particular, las fianzas convencionales o voluntarias surgen del acuerdo de voluntades que precede un contrato, mientras que las fianzas legales y judiciales son aquellas en la que la ley o la autoridad judicial exige el afianzamiento de una obligación en particular. Íd., pág. 59. En defecto de lo establecido por la ley o por la autoridad judicial correspondiente, las fianzas legales y judiciales se rigen por las disposiciones aplicables a las fianzas convencionales. Íd.; véase Sucn. María Resto v. Ortiz, supra, págs. 812-813.

Al interpretar lo anterior, hemos explicado que la ley que exige la fianza "constituye parte de la fianza como si estuviera incorporada en ella". Pueblo v. Peñagarícano, 54 DPR 613, 617-618 (1939); véase además Cristy & Sánchez v. ELA, 84 DPR 234, 239 (1961). También hemos dicho que se presume que la intención de las partes al pactar un contrato de fianza legal es cumplir con los requisitos de la ley o el reglamento que exige la fianza. Véase Montalvo & Comas Elec. Corp. v. ELA, 107 DPR 558, 562 (1978); Pueblo v. Peñagarícano, supra, pág. 617. Así, "[n]o es necesario, pues, que en el documento de fianza, se especifiquen todas y cada una de las personas garantizadas por la misma, ya que dichas personas están debidamente descritas en las disposiciones de ley aplicables o en los términos del contrato garantizado". Cristy & Sánchez v. ELA, supra, pág. 239.

C. Fianza de concesionarios de vehículos de motor

El artículo 2.16 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, 9 LPRA sec. 5017, faculta al Secretario del DTOP a reglamentar la concesión de licencias para operar un concesionario de vehículos de motor. En virtud de esta facultad, el Secretario del DTOP promulgó el Reglamento sobre Normas y Requisitos para Obtener y Renovar Licencia de Concesionario y Distribuidor de Vehículos de Motor y Arrastres, Reglamento Núm. 6274 del Departamento de Transportación y Obras Públicas de 2 de enero de 2001. El artículo VIII de este reglamento establece los requisitos para obtener la licencia de

concesionario de vehículos de motor y arrastres. Uno de estos requisitos es mantener una:

> [f]ianza mínima de cien ($100,000.00) mil dólares para el negocio principal y bajo la cual podrá incluirse la primera sucursal solicitada. **La fianza cubrirá cualquier reclamación, entre otros, cheques no honrados por el Banco, pago de tablillas, multas, vicios ocultos y garantía.** Por cada lote o sucursal adicional se requerirá fianza de cincuenta ($50,000.00) mil dólares. En caso que el negocio principal cese funciones, la sucursal incluida en la fianza pasará a fungir como principal y la fianza deberá pasar a ésta. Reglamento Núm. 6274, supra, Art. VIII, págs. 13-14 (énfasis suplido).

A su vez, el artículo XVII del Reglamento Núm. 6274, supra, faculta al Secretario del DTOP a confiscar esta fianza para satisfacer "cualquier deuda o reclamación presentada por persona interesada". Íd., Art. XVII, pág. 26.

A la luz de este marco jurídico, procedemos a resolver.

                                III

En primer lugar, debemos atender el planteamiento de naturaleza jurisdiccional levantado por MAPFRE.[6] Específicamente, esta cuestiona la facultad del DACo para conceder un remedio a Scotiabank debido a que la ley orgánica de esa agencia protege exclusivamente a los consumidores.

Sabido es que las agencias administrativas solo tienen aquellos poderes que le son conferidos por ley.

---

[6] Por su carácter privilegiado, nos vemos en la obligación de atender el cuestionamiento aun cuando MAPFRE no lo presentó ante los foros recurridos. Véase Fuentes Bonilla v. ELA, 200 DPR 364, 372 (2018) y J. Cuevas Segarra, Tratado de Derecho Procesal Civil (L. Abraham y P. Abraham, eds.), 2da ed., Pubs. JTS, 2011, T. I, pág. 177.

Oficina de Asuntos Monopolísticos del Departamento de Justicia v. Jiménez Galarza, 199 DPR 293 (2017). Con el propósito de analizar la autoridad en ley del DACo para ordenar un remedio a favor de una parte querellada que no es un consumidor, conviene repasar lo que resolvimos en Pérez Ríos v. Hull Dobbs, 107 DPR 834 (1978), y en Martínez v. Rosado, 165 DPR 582 (2005).

En Pérez Ríos v. Hull Dobbs, supra, el Sr. Bolivar Pérez Ríos compró un vehículo de motor nuevo a Hull Dobbs 65th Infantry Ford, Inc. (Hull Dobbs) mediante un contrato de compraventa a plazos. El vehículo desarrolló defectos que Hull Dobbs no pudo corregir, razón por la cual el señor Pérez Ríos presentó una querella en su contra ante el DACo. Durante el procedimiento, Hull Dobbs solicitó incluir como parte a la Ford Motor Company, fabricante del automóvil, sin éxito. Eventualmente el DACo ordenó la resolución del contrato y ordenó a Hull Dobbs y a Chase Manhattan Bank, en forma solidaria, que devolvieran al señor Pérez Ríos el dinero que pagó por el automóvil.

Hull Dobbs solicitó revisión ante el Tribunal Superior, el cual ordenó al DACo permitirle a la parte apelante traer como parte a la Ford Motor Company. Según el tribunal, DACo debía permitir que la manufacturera levantara cualquier defensa que pudiera tener contra la reclamación del señor Pérez Ríos. Sostuvo que el DACo no tenía que considerar defensas ni alegaciones que afecten únicamente la relación entre vendedora y manufacturera,

sino solo aquellas que pudiesen afectar la reclamación del querellante con la vendedora.

El DACo recurrió ante este Tribunal y señaló que el Tribunal Superior erró al ordenar la inclusión como parte del manufacturero del vehículo de motor. En aquella ocasión revocamos al Tribunal Superior y confirmamos la negativa del DACo de permitir al vendedor querellado traer a un tercero al procedimiento administrativo.

Fundamentamos esa determinación en la misión primordial de la agencia de vindicar los derechos de los consumidores. Sostuvimos que "[l]a inclusión de un tercero en el proceso administrativo **sin que el querellante o la agencia lo estime necesario o conveniente**, complica y retarda innecesariamente el procedimiento," lo cual derrotaría el aludido propósito. Íd., pág. 841 (énfasis suplido). El proceso ante el DACo tiene el objetivo de que se le responda inmediatamente al consumidor. Por ello, resaltamos la incompatibilidad de sujetar al consumidor que reclama contra el vendedor a que espere que se dilucide la larga cadena de responsabilidades entre el vendedor y el manufacturero u otras entidades con la misión de la agencia. Íd. Destacamos que las responsabilidades entre esas otras partes se pueden dilucidar mediante litigación ordinaria. Íd.

En aquella ocasión también hicimos la salvedad de que "la inclusión de un tercero sería mandatoria si su exclusión le privase de su día en corte". Íd. Por consideraciones fundamentadas en el debido proceso de ley,

reconocimos que la exclusión de la Ford Motor Company del procedimiento administrativo no impedía que esta presentara todas las defensas que tuviese contra Hull Dobbs, de presentarse una reclamación judicial en su contra. Aún así, entendimos necesario aclarar que "siempre queda a salvo la facultad de DACO y la del querellante de traer al procedimiento al manufacturero **si cualquiera de ellos estima que es necesario o conveniente así hacerlo**". Íd., págs. 842-843 (énfasis suplido).

En Martínez v. Rosado, supra, enfrentamos una controversia similar, pero en el contexto de una querella por incumplimiento contractual en una obra de construcción. El Sr. Luis Martínez Segarra y su esposa, la Sra. Blanca Rosa Hernández, presentaron una querella ante el DACo contra el contratista de la obra, el Sr. Juan Rosado Santoni, en la que alegaron que el hormigón que se utilizó no cumplió con las medidas requeridas en los planos de construcción.

El señor Rosado Santoni negó responsabilidad y solicitó la inclusión de Macro Mix, Inc. como parte de la querella. Argumentó que Macro Mix, Inc. fue quien suplió el hormigón defectuoso, por lo que era parte indispensable en los procedimientos. DACo denegó la solicitud, debido a que los esposos Martínez-Rosa presentaron la querella exclusivamente contra el señor Rosado Santoni. Además, indicó que carecía de jurisdicción sobre cualquier controversia entre el señor Rosado Santoni y Macro Mix, Inc.

El señor Rosado Santoni acudió al Tribunal de Apelaciones en revisión. El foro apelativo ordenó al DACo a celebrar una vista para determinar si Macro Mix, Inc. incumplió con su obligación en cuanto al señor Rosado Santoni, y los daños relacionados. Inconforme, DACo recurrió ante este Tribunal y señaló que el Tribunal de Apelaciones erró al concluir que la agencia tenía jurisdicción sobre una disputa entre comerciantes.

Este Tribunal, descansando en lo que resolvió en Pérez Ríos v. Hull Dobbs, supra, nuevamente sostuvo el criterio del DACo en torno a la improcedencia de incluir en el procedimiento a una entidad que el consumidor no incluyó en la querella. Resolvimos que el Tribunal de Apelaciones erró al ordenar la celebración de una vista para atender lo que era en esencia una disputa entre entidades que no eran consumidores. Determinamos que el señor Rosado Santori, como contratista, no podía aprovecharse del esquema administrativo del DACo para reclamarle a Macro Mix, Inc. debido a que "se trata de una controversia que no afecta consumidor alguno, en vista de que al verdadero consumidor en este caso, el matrimonio Martínez-Rosa, se le proveyó el remedio solicitado sin necesidad de entrar a considerar esta disputa". Martínez v. Rosado, supra, pág. 597. De acuerdo con lo anterior, concluimos que el DACo no podía sujetar a la parte querellante a esperar porque se dilucidara la responsabilidad de Macro Mix, Inc. frente al señor Rosado Santori. Íd.

Luego de un análisis concienzudo de estos casos vemos que la inclusión de terceros en la querella que dio paso a la controversia ante nuestra consideración se fundamenta en consideraciones materialmente distintas a las presentes en Pérez Ríos v. Hull Dobbs, supra, y en Martínez v. Rosado, supra. Aquí, lejos de oponerse a que se incluyan terceros, fue el propio consumidor el que incluyó a Scotiabank y a MAPFRE en la querella. Por un lado, la inclusión de Scotiabank se debe a la "relación tripartita" que ocurre bajo la Ley de Ventas a Plazos y Compañías de Financiamiento, Ley Núm. 68 de 19 de junio de 1964, 10 LPRA sec. 742(4), la cual dispone que el cesionario del contrato (la entidad financiera) responderá en igualdad de condiciones por cualquier reclamación que el comprador pueda tener contra el vendedor original. Berríos v. Tito Zambrana Auto, Inc., 123 DPR 317, 328 (1989); véase además R & J v D.A.Co., 164 DPR 647, 655-656 (2005). Por otro lado, la inclusión de MAPFRE obedeció al contrato de fianza legal que suscribió con Armando Soler al amparo del Reglamento Núm. 6274, supra.

Debido a las particularidades de la relación entre estas entidades, es evidente que la inclusión de Scotiabank y MAPFRE respondió a la facultad del DACo de traer al procedimiento a quienes la agencia o el querellante estimen necesario o conveniente para brindarle al consumidor un remedio completo, ágil, eficiente y costo efectivo. Martínez v. Rosado, supra, pág. 592; Pérez Ríos v. Hull Dobbs, supra, págs. 842-843. Las posibilidades de

desvirtuar, complicar o retrasar el procedimiento ante el DACo, que estaban presentes en Martínez v. Rosado, supra, y en Pérez Ríos v. Hull Dobbs, supra, sencillamente no están presentes en casos como el de autos.

Al tomar en consideración lo anterior, concluimos que el DACo no se extralimitó en sus funciones al emitir una orden a favor de una de las entidades querelladas, debido a que dicha orden fue parte del remedio integral que el DACo estimó que mejor protege los intereses del consumidor afectado. Recordemos que las interpretaciones de una agencia de los estatutos que administra y de los cuales es responsable de su cumplimiento merecen deferencia judicial. Martínez v. Rosado, supra, pág. 589. En esta controversia, la orden que el DACo realizó se circunscribió a viabilizar la restitución de todas las prestaciones, remedio que puede conceder por autoridad de ley, además del peritaje técnico necesario, y que estuvo enmarcado dentro del remedio que decretó a favor del consumidor.

Por esta razón, rechazamos fraccionar la adjudicación de responsabilidad entre Scotiabank y MAPFRE. El señor Ortiz Rolón trajo a MAPFRE al procedimiento, el DACo lo consideró conveniente y necesario para proteger los intereses del señor Ortiz Rolón y no resultó en trámite adicional alguno frente a la agencia. Resolver distinto sería contrario al principio de economía procesal y expondría a las partes a determinaciones judiciales inconsistentes sin beneficio alguno para el consumidor.

IV

Atendida la autoridad del DACo para emitir la orden impugnada, pasamos a considerar el único señalamiento de error. Este exige que determinemos si la obligación de Armando Soler hacia Scotiabank de devolver el precio pagado por la cesión del contrato de compraventa a plazos está cobijada por la fianza que el Reglamento Núm. 6274, supra, exige para la obtención de la licencia para operar un concesionario de vehículos de motor.

A pesar del ámbito abarcador de la referida disposición reglamentaria, el Tribunal de Apelaciones resolvió que la fianza que MAPFRE emitió a favor de Armando Soler en virtud del Reglamento Núm. 6274, supra, no cobija la obligación de Armando Soler hacia Scotiabank. El foro intermedio basó su determinación en la disposición del contrato de fianza que establece que la fianza cobijará a quienes Armando Soler "pueda vender vehículos de motor".[7]

Al analizar esta controversia, se debe tener presente que las fianzas legales se rigen, en primer lugar, por la ley que las exige. Sucn. María Resto v. Ortiz, supra, págs. 812-813. Es decir, si el contrato de fianza

---

[7] Apéndice, Contrato de fianza, pág. 94 (traducción suplida). La disposición pertinente del contrato reza como sigue:

KNOWN ALL MEN BY THESE PRESENTS, that we Armando Soler Auto Sales Inc […] as Principal, and MAPFRE PRAICO INSURANCE CO […] as Surety, are held and firmly bound unto the persons to whom the ARMANDO SOLER AUTO SALES INC may sell cars, hereinafter called obligees, in the sum of ONE HUNDRED THOUSAND AND 00/100 Dollars ($100,000.00) for the payment of which sum said Principal and Surety bind themselves, their legal representatives, executors, administrators, heirs, successors and assigns, jointly and severally, firmly by these presents. Íd.

menoscaba la protección que ofrece la disposición legal que exige la fianza, debe prevalecer el mandato del legislador. Michel J. Godreau Robles, Obligaciones Y Contratos, 81 Rev. Jur. UPR 645, 647 (2012).

En Cristy & Sánchez v. ELA, supra, estuvimos ante una controversia análoga, ya que el contrato de fianza en controversia establecía que la fianza se emitió a favor del Estado exclusivamente. No obstante, al tomar en cuenta los requerimientos de la ley que exigía la fianza, resolvimos que los proveedores de materiales y mano de obra podían reclamar contra ella, aun tomando en cuenta lo que disponía el contrato al contrario. Íd., págs. 243-244.

De forma similar, en el caso de autos procede evaluar si la obligación de Armando Soler hacia Scotiabank es una de las obligaciones que el artículo VIII del Reglamento Núm. 6274, supra, exige que se afiancen. En primer lugar, debemos tener presente la "relación tripartita" que ocurre bajo la Ley de Ventas a Plazos y Compañías de Financiamiento entre el comprador, el vendedor original y la compañía financiera (cesionario). R & J v D.A.Co., supra, pág. 655; Berríos v. Tito Zambrana Auto, Inc., supra, págs. 328-329. Esta ley dispone que:

> El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor. El cesionario del contrato tendrá derecho a presentar contra el vendedor todas las reclamaciones y defensas que el comprador pueda levantar contra el vendedor de los artículos o servicios. 10 LPRA sec. 742(4).

Por lo tanto, por la propia naturaleza de la relación tripartita la entidad financiera está en igualdad de condiciones que el comprador en cuanto a las reclamaciones que puede levantar contra el vendedor.

Establecido lo anterior, corresponde que examinemos el alcance de la disposición reglamentaria que exige la fianza. Según el artículo VIII del Reglamento Núm. 6274, supra, un concesionario de vehículos de motor deberá mantener una fianza que cubrirá "cualquier reclamación", como, por ejemplo, "cheques no honrados por el Banco, pago de tablillas, multas, vicios ocultos y garantía". Reglamento Núm. 6274, supra, Art. VIII, pág. 14. Además, el artículo XVII no incluye restricción alguna sobre quién puede reclamar contra la fianza, salvo que sea una "parte interesada". Reglamento Núm. 6274, supra, Art. XVII, pág. 26.

Finalmente, según se discutió en la exposición del derecho aplicable, lo dispuesto en el artículo VIII del Reglamento Núm. 6274, supra, sobre los requisitos que deberá cumplir la fianza de un concesionario de vehículos de motor debe considerarse incorporado en el contrato de fianza que emitió MAPFRE. Sucn. María Resto v. Ortiz, supra, págs. 812-813; Montalvo & Comas Elec. Corp. v. ELA, supra, pág. 562; Cristy & Sánchez v. ELA, supra, pág. 239; Pueblo v. Peñagarícano, supra, págs. 617-618.

En este caso DACo ordenó a las partes restituirse lo pagado y obligó a Armando Soler y a MAPFRE a responder por las pérdidas y gastos en los que incurrió Scotiabank como

resultado del decreto de nulidad. Esta obligación está íntimamente ligada con las actividades de venta de vehículos de motor en las que el concesionario incurrió y surge de la conducta ilícita de este, la cual desembocó en la nulidad del contrato de compraventa. No nos cabe duda, por tanto, que la obligación de Armando Soler con Scotiabank se puede catalogar como "cualquier reclamación" y que el banco es "persona interesada" bajo el Reglamento Núm. 6274, supra.

Scotiabank como cesionario tiene derecho a presentar contra Armando Soler todas las reclamaciones que tiene el señor Ortiz Rolón, entre ellas beneficiarse de la fianza legal que el Reglamento Núm. 6274 le requirió a Armando Soler por ser un concesionario de vehículos de motor. Solo así el contrato de fianza en controversia se interpreta en armonía con la relación tripartita reconocida en la Ley de Ventas a Plazos y Compañías de Financiamiento y con lo que dispone el Reglamento Núm. 6274, supra. Además, el contrato de fianza se debe interpretar de forma integral con las otras cláusulas del contrato, incluyendo las que condicionan la validez de la fianza a que Armando Soler esté autorizado para operar un concesionario de vehículos de motor bajo la reglamentación aplicable y que esté en cumplimiento con la misma.[8] Véase M.E. García Cárdenas,

---

[8] La parte relevante del contrato de fianza lee como sigue:

WHEREAS, a license has been granted by the Department of Transportation and Public Work to ARMANDO SOLER AUTO SALES INC authorizing them to operate as an automobile dealer in compliance with Law 141 approved July 20, 1960 Section 2-206 as amended.

WHEREASE, it is a condition of the foregoing obligation that the said ARMANDO SOLER AUTO SALES INC has been duly

Derecho de Obligaciones y Contratos, 2da ed., Puerto Rico,

MJ Editores, 2017, pág. 529.

En vista de lo anterior, resolvemos que la obligación

de Armando Soler de restituir a Scotiabank el monto pagado

por la cesión del contrato de compraventas a plazos está

cobijada por el contrato de fianza que emitió MAPFRE en

virtud del Reglamento Núm. 6274, supra.[9]

V

Por los fundamentos que anteceden, se revoca en parte

la Sentencia del Tribunal de Apelaciones a los efectos de

disponer que MAPFRE responde subsidiariamente ante

Scotiabank por la cantidad que pagó a Armando Soler por la

cesión del contrato de compraventa a plazos.

Se dictará Sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

authorized to operate as an automobile dealer under the aforementioned general regulations applicable to automobile dealers as approved by the Department of Transportation and Public Works.
    NOW, THEREFORE, if the said ARMANDO SOLER AUTO SALES INC shall truly and faithfully execute and discharge all the duties and trusts imposed upon them as an automobile dealer under the General Regulation approved by the Department of Transportation and Public Works and specifically as required under Section 2-B-5 of such regulations as to be liable for all damages which his breach may inflict upon persons to whom ARMANDO SOLER AUTO SALES INC may sell autos, then this obligation to be void, otherwise to remain in full force and effect. Apéndice, contrato de fianza, pág. 94.

[9] La obligación se limita al monto pagado por la cesión del contrato porque el Tribunal de Apelaciones, a petición de Scotiabank, resolvió que ésta no respondía por los daños ocasionados al señor Ortiz Rolón.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Ortiz Rolón

      Recurrido

      v.

ARMANDO SOLER AUTO SALES, INC.; Presidente Xavier Ayala Cruz HVPH Motor Corp. d/b/a Lexus De San Juan; Scotiabank De Puerto Rico; MAPFRE

      Peticionarios

CC-2017-0076

SENTENCIA

En San Juan, Puerto Rico, a 4 de junio de 2019.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca en parte la Sentencia del Tribunal de Apelaciones a los efectos de disponer que MAPFRE/PRAICO Insurance Co. responde subsidiariamente ante Scotiabank de Puerto Rico por la cantidad que pagó a Armando Soler Auto Sales, Inc. por la cesión del contrato de compraventa a plazos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Pabón Charneco concurre sin opinión escrita. El Juez Asociado señor Martínez Torres disiente y hace constar la siguiente expresión, a la cual se une el Juez Asociado señor Rivera García:

El DACo fue creado como un foro especializado para dilucidar y adjudicar los derechos del consumidor de manera ágil, sencilla y económica. Martínez v. Rosado, 165 DPR 582, 593 (2005). En este caso, el DACo se extralimitó en sus poderes y, consecuentemente, actuó sin jurisdicción al emitir la orden a favor

de Scotiabank. Al hacerlo, adjudicó una posible controversia entre comerciantes, que en nada afectaba al consumidor. Una agencia administrativa no puede asumir jurisdicción sobre situación alguna que no esté autorizada por ley; es decir, ni la necesidad, ni la utilidad, ni la conveniencia pueden sustituir al estatuto en cuanto a fuente de poder de una agencia administrativa. Martínez v. Rosado, supra, pág. 594.

El Juez Asociado señor Kolthoff Caraballo no intervino.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo