EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Universal Insurance Company<br><br>Recurrida<br><br>v.<br><br>Popular Auto, LLC<br><br>Peticionarios<br><br>Luis E. Blanco, Germania Silverio, Rafael Martínez y otros<br><br>Recurridos | Certiorari<br><br>2021 TSPR 74<br><br>207 DPR ____ |

Número del Caso:  CC-2019-847


Fecha: 28 de mayo de 2021


Tribunal de Apelaciones:

    Panel I


Abogado de la parte peticionaria:

    Lcdo. Jorge A. Rotger Reyes


Abogada de la parte recurrida:

    Lcda. Grisselle González Negrón



Materia: Obligaciones y Contratos: La fianza conocida como dealer bond es una fianza legal que responde por la cantidad de $100,000.00 anuales y no como un fondo único, durante los años en que la misma esté vigente.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Universal Insurance Company

    Recurrida

       v.

Popular Auto, LLC               CC-2019-0847    *Certiorari*

    Peticionarios

Luis E. Blanco, Germania
Silverio, Rafael Martínez
y otros

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 28 de mayo de 2021.

En el presente caso, -- el cual tiene como objeto cierta fianza conocida como *dealer bond*, la cual se exige a los concesionarios y distribuidores de vehículos de motor para poder operar en Puerto Rico --, nos corresponde determinar si el Tribunal de Apelaciones erró al revocar cierta *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia. Ello, tras concluir que la cantidad estipulada en la fianza aquí en controversia constituía un límite de responsabilidad global por todos los años de vigencia, en virtud de un fondo único, y no una anualidad.

Adelantamos que, luego de un detenido y cuidadoso análisis de los hechos ante nuestra consideración, así

como del derecho aplicable, fianzas como las aquí en controversia responden por la cantidad de cien mil dólares ($100,000.00) anuales, y no como un fondo único, durante los años en que las mismas estén vigentes. Veamos.

I.

Allá para el 26 de marzo de 2009, Universal Insurance Company (en adelante, "Universal") emitió una fianza, conocida como *dealer bond*, -- por la suma de cien mil dólares ($100,000.00) y con vigencia del 26 de marzo de 2009 al 26 de marzo de 2010 --, a favor del concesionario de vehículos de motor Empresas Maseda, Inc. D/B/A/ JM Auto Group & Eurohaus (en adelante, "Empresas Maseda").[1] La referida fianza se otorgó con el fin de que este último pudiera obtener su licencia como concesionario autorizado de venta de vehículos de motor en nuestra jurisdicción, conforme exigía la Ley de Vehículos y Tránsito de Puerto Rico de 1960, *infra*.[2]

En lo pertinente, el referido contrato de fianza establecía que Universal y Empresas Maseda:

> [a]re held and firmly bound unto purchaser seller financing agency or governmental agency for any monetary loss caused through fraud cheating or misrepresentation in the conduct of the vehicle business by the named principal in the total penal sum of One hundred thousand and 00/100 ($100,000) lawful money of the United States of America for

---

[1] La fianza está identificada con el número 100056320. Véase, Apéndice de *certiorari*, pág. 280.

[2] Si bien el contrato de fianza hace referencia a la Ley Núm. 141 de 2 de julio de 1960, conocida como Ley de Vehículos y Tránsito de Puerto Rico, la misma estaba derogada al momento del otorgamiento del referido contrato, por lo que la ley vigente era la Ley Núm. 22 de 7 de enero de 2000, *infra*.

> which sum well and truly to be paid said Principal
> and Surety bind themselves ... (Énfasis suprimido).
> Véase, Apéndice de *certiorari*, pág. 280.

Por su parte, la cuarta cláusula del mencionado documento expresaba que "[t]he principal and surety shall indemnify or reimburse any purchaser seller financing agency or governmental agency for any monetary loss only after judgement based on fraud cheating or misrepresentation has been entered in a court of record against the licensee ...". (Énfasis suplido). *Íd.* Es decir, la fianza antes descrita no solo respondía ante un consumidor, sino también ante cualquier institución financiera o agencia gubernamental cuando éstos sufrieran pérdidas monetarias a causa de los actos u omisiones fraudulentos u engañosos por parte del principal; en este caso, Empresas Maseda.[3]

Posteriormente, entre los años 2009 al 2013 para ser específicos, -- y con el fin de mantener en vigor el referido contrato de fianza por la suma de cien mil dólares ($100,000.00) --, se emitieron certificados de continuación. Estos certificados se emitían anualmente y bajo las mismas condiciones estipuladas en el primero de los contratos. **Para ello, Empresas Maseda pagaba mil dólares ($1,000.00) anuales en concepto de prima.**

---

[3] También se estipuló que la responsabilidad agregada de Universal -- en aquellos dictámenes en los que se determinara que en efecto el principal incurrió en fraude o engaño -- no excedería la cantidad estipulada en el contrato de fianza, entiéndase cien mil dólares ($100,000.00).

En cada uno de los certificados de continuación emitidos, se establecía que "[t]his continuation is executed upon the express condition that the Company liability shall not be cumulative and shall be limited at all times by the amount of the penalty stated in the bond". (Énfasis suplido).[4] Dicho de otro modo, los certificados de continuación se emitieron bajo la condición expresa de que la responsabilidad de Universal no se acumularía, sino que se limitaría -- en todo momento -- a la cantidad de cien mil dólares ($100,000.00) estipulada en el contrato de fianza.

Ahora bien, luego del otorgamiento del mencionado contrato de fianza y de forma simultánea a la emisión de los referidos certificados de continuación, surgieron varias disputas entre Empresas Maseda y ciertas personas que adquirieron vehículos de motor en dicho concesionario. Según se desprende del expediente ante nos, estos consumidores alegaron, en síntesis, que cedieron la posesión de sus vehículos a Empresas Maseda en calidad de vehículo tomado a cuenta (*trade in*). No obstante, el mencionado concesionario no canceló el balance del financiamiento de los referidos automóviles con Popular Auto LLC (en adelante, "Popular Auto"). En consecuencia, los consumidores comenzaron a recibir cartas de cobro por parte de la referida institución

---

[4] El 22 de agosto de 2013, Universal remitió una comunicación al Departamento de Transportación y Obras Públicas cancelando la fianza 10056320, con fecha de efectividad del 21 de septiembre de 2013.

bancaria, por haber sido ésta quien financió los vehículos que fueron entregados en *trade in*. Ante ello, éstos radicaron sendas querellas en el Departamento de Asuntos del Consumidor (en adelante, "DACO").[5]

---

[5] A continuación, hacemos un breve resumen de los hechos que motivaron las controversias ante nuestra consideración:

(1) señor Radamés Jiménez Román: El 11 de septiembre de 2010, el señor Jiménez Román cedió a Empresas Maseda la posesión de su vehículo en calidad de *trade in*, pero dicho concesionario no canceló $11,840.75 que el cliente adeudaba como parte del financiamiento otorgado por Popular Auto. En atención a ello, éste presentó la querella número PO-4159. El 6 de junio de 2014, DACO dictó una *Resolución Sumaria* ordenando el cierre de la misma por falta de jurisdicción ante la presentación de cierta acción judicial por parte de Universal.

(2) señor Juan Colón Corchado: En febrero de 2013, éste cedió a Empresas Maseda la posesión de su vehículo en calidad de *trade in*, pero dicho concesionario no canceló $35,259.11 que el cliente adeudaba como parte del financiamiento otorgado por Popular Auto. No obstante, el señor Colón Corchado no acudió ante DACO.

(3) señora Germania Silverio Tejeda: El 8 de mayo de 2013, la señora Silverio Tejeda cedió la posesión de su vehículo a Empresas Maseda en calidad de *trade in*. No obstante, el referido concesionario no canceló el balance adeudado de $19,999.30. En consecuencia, ésta acudió ante DACO mediante la querella número SJ-10995. El 19 de junio de 2014, la referida agencia administrativa dictó una *Resolución* ordenando que Empresas Maseda y Universal pagaran solidariamente a Popular Auto el balance de liquidación del vehículo.

(4) señora Risela B. Ferrer Santiago: El 16 de julio de 2013, la señora Ferrer Santiago notificó que cedió a Empresas Maseda la posesión de su vehículo en calidad de *trade in*. Empresas Maseda no canceló el balance de financiamiento pero, debido a que Popular Auto recuperó el automóvil y dispuso del mismo, se acreditó el valor al balance de cancelación, quedando una deficiencia de $11,104.83. Por dicha razón, la señora Ferrer Santiago acudió ante DACO -- mediante la querella número AR-5037 -- el cual desestimó la querella y ordenó su archivo el 3 de diciembre de 2013. Lo anterior, ante el cierre de operaciones de Empresas Maseda.

(5) señor Moisés A. Rivera Capella: El 2 de agosto de 2013, el señor Rivera Capella cedió la posesión de su vehículo a Empresas Maseda, en calidad de *trade in*. Este último no canceló el balance del financiamiento con Popular Auto. Ahora bien, ya que la referida entidad financiera pudo recuperar el vehículo, dispuso del mismo y acreditó el valor al balance, sólo quedó una deficiencia de $7,825.10. Así pues, el señor Rivera Capella presentó la querella número CA-0004719 ante DACO. El 15 de agosto de 2014, DACO emitió una

A la luz de lo anterior, el 11 de julio de 2014, en virtud de la Regla 19 de Procedimiento Civil, 32 LPRA Ap. V., Universal presentó ante el Tribunal de Primera Instancia la demanda de *interpleader* objeto del presente caso. En la misma, la mencionada compañía fiadora acumuló como demandados a varias personas naturales y jurídicas, quienes tenían reclamaciones en contra de Empresas Maseda, su fiado. Así pues, adujo que -- conforme a la precitada regla -- procedía que dichas partes litigaran los créditos entre sí. Para ello, presentó una solicitud de consignación por la cantidad de cien mil dólares ($100,000.00) tras argüir que su responsabilidad con relación a la fianza se limitaba a dicha suma y las reclamaciones antes mencionadas excedían la misma.[6]

---

*Resolución* ordenándole a Empresas Maseda y Universal pagar a Popular Auto el balance de cancelación del vehículo.

(6) señor Francisco Torres Maldonado: El 21 de agosto de 2013, el señor Torres Maldonado cedió a Empresas Maseda la posesión de su automóvil en calidad de *trade in*. Empresas Maseda, por su parte, no canceló el balance del financiamiento con Popular Auto, quedando una deuda de $25,451.19. Ante dicha situación, el señor Torres Maldonado acudió ante DACO a través de la querella número CA-4715. El 11 de junio de 2014, DACO emitió una *Resolución en reconsideración* en la que ordenó al referido concesionario devolver el vehículo dado en *trade in* o su equivalente económico.

(7) señor Luis Blanco Ortiz: El 12 de septiembre de 2013, el señor Blanco Ortiz notificó a un representante autorizado de Popular Auto, que cedió la posesión de su automóvil a Empresas Maseda, en calidad de *trade in*. Sin embargo, este último no canceló el balance de financiamiento de $33,485.26. El señor Blanco Ortiz no acudió a DACO.

[6] Enterado de la anterior demandada, Popular Auto argumentó que Universal no cumplió con los requisitos correspondientes al recurso de *interpleader*. Evaluados los argumentos de ambas partes, el 5 de agosto de 2014 el Tribunal de Primera Instancia dictó una *Sentencia* desestimando la demanda sin perjuicio. El foro primario razonó que las reclamaciones bajo la fianza debían continuar ventilándose ante los foros

Enterado de lo anterior, Popular Auto contestó la demanda y alegó, en síntesis, que la fianza emitida por Universal respondía por todas las reclamaciones que se presentaran por cada año en que ésta se prestó o renovó, hasta el límite de la misma. Señaló, además, que Universal no realizó una consignación, sino un depósito judicial; por lo que no se extinguió su obligación de responder bajo la fianza.

Asimismo, la referida institución financiera presentó una reconvención en la cual sostuvo que la fianza objeto de la presente controversia fue renovada consecutivamente de forma anual, desde el 26 de marzo de 2010 hasta el 26 de marzo de 2014. En consecuencia, solicitó que, en virtud de lo anterior, se pagaran las cuantías equivalentes a los balances que Empresas Maseda no canceló luego de haberse entregado ciertos vehículos en *trade in.*[7]

Así las cosas, y luego de varios trámites procesales no necesarios aquí pormenorizar, Popular Auto solicitó que se dictara sentencia sumaria parcial, tras argüir que el límite de responsabilidad de la fianza suscrita por Universal era de cien mil dólares ($100,000.00) por cada año que fue prestada, continuada o renovada, y no un fondo único como

---

correspondientes y que Universal respondería hasta el máximo que se obligó bajo la fianza.

En desacuerdo, Universal acudió ante el Tribunal de Apelaciones, el cual determinó que procedía la demanda de *interpleader* por lo que dicho foro devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

[7] Entiéndase, los vehículos entregados en *trade in* a Empresas Maseda por los clientes a los que hemos hecho referencia en la nota al calce 5.

esta última planteaba. De igual forma, solicitó al foro primario que determinara que la cantidad de dinero depositada no constituyó una consignación, sino un depósito judicial al amparo de la Regla 35.3 de Procedimiento Civil, *supra*. Por último, solicitó que se ordenara el desembolso de dicho dinero a su favor.

Por su parte, Universal se opuso a la anterior solicitud y arguyó que el contrato de fianza en controversia disponía que su responsabilidad no sería acumulativa. Además, sostuvo que los certificados de continuación que se expedían anualmente solo tenían como propósito extender la vigencia de la fianza y no aumentar la cuantía a la cual se responsabilizaba.

Evaluados los argumentos de las partes, el 27 de marzo de 2019 el Tribunal de Primera Instancia dictó *Sentencia Sumaria Parcial*. Al así hacerlo, el foro primario razonó que el *dealer bond* emitido por Universal era una fianza legal cuyo límite de cien mil dólares ($100,000.00) era por cada año en que fue renovada, pues concluir que se trataba de un fondo único durante la vigencia de la misma, a juicio de dicho foro, estaría en clara contravención de la ley que la exige.

De igual modo, el Tribunal de Primera Instancia concluyó que Universal realizó un depósito judicial por la mencionada cantidad y no una consignación, por lo que no extinguió su obligación. En consecuencia, el foro primario determinó que procedían las cuantías reclamadas por Popular Auto, por lo

que ordenó el pago de un total de $144,965.54, relacionados a reclamaciones surgidas en los periodos 2010-2011, 2012-2013 y 2013-2014.

Insatisfecho con lo dictaminado por el Tribunal de Primera Instancia, Universal acudió al Tribunal de Apelaciones. En su recurso de apelación, ésta adujo que el foro primario erró al concluir que la fianza aquí en controversia respondía por una cantidad mayor a la suma de cien mil dólares ($100,000.00) ya que, a juicio de la referida corporación, los certificados de continuación establecieron de forma expresa que dicha cantidad no sería acumulativa. En segundo lugar, la compañía fiadora argumentó que el Tribunal de Primera Instancia erró al concluir que Popular Auto tenía una reclamación válida, a pesar de que éste no era un consumidor. Por último, ésta señaló que el foro primario incidió al razonar que Universal realizó un depósito judicial y no una consignación. A dicha solicitud, Popular Auto se opuso.

Tras analizar los alegatos de ambas partes, el 16 de septiembre de 2019 el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual revocó al Tribunal de Primera Instancia. Ello, tras concluir que el contrato de fianza otorgado entre Universal y Empresas Maseda era hasta un máximo de cien mil dólares ($100,000.00) no acumulativos de año en año, sino como un fondo único disponible para todas las reclamaciones que pudieran surgir durante la vigencia de la fianza.

A juicio del foro apelativo intermedio, si bien se trataba de una fianza legal, su interpretación debía atenerse a la expresión contractual e intención de las partes, siempre que no contraviniera la ley. Además, razonó que de la fianza suscrita surgía que Universal se obligó a responder ante cualquier comprador, vendedor, institución financiera o agencia de gobierno, por lo que Universal sí le respondía a Popular Auto por el incumplimiento de Empresas Maseda. De esta forma, devolvió el caso al Tribunal de Primera Instancia a los fines de determinar si las reclamaciones cumplían con las condiciones estipuladas en el contrato.

En desacuerdo con lo anterior, Popular Auto comparece ante nos mediante *certiorari*. En éste, sostiene que el tribunal *a quo* erró al determinar que la fianza emitida por Universal debe interpretarse a base de la expresión contractual y no conforme al cuerpo de ley que la requiere, y al concluir que el límite de responsabilidad bajo la misma es un fondo único de cien mil dólares ($100,000.00). Asimismo, argumenta que el foro apelativo intermedio erró al razonar que la fianza responde por las reclamaciones que cumplan con las condiciones establecidas en el texto de la fianza y no aquellas que requiere la ley.

Trabada así la controversia, expedimos el recurso el 30 de enero de 2020 y, con la comparecencia de ambas partes en el litigio, procedemos a esbozar la normativa aplicable a la misma.

II.

A.

Como es sabido, de conformidad con lo dispuesto en el Art. 1042 del Código Civil, 31 LPRA sec. 2992 (derogado), en nuestra jurisdicción, "las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones o en que intervenga cualquier género de culpa o negligencia".[8] *Demeter Intl. V. v. Srio. Hacienda*, 199 DPR 706, 726 (2018); *López v. González*, 163 DPR 275, 281 (2004); *Cervecería Corona, Inc. v. Tribunal Superior*, 99 DPR 698, 703 (1971).

Por su parte, el Art. 1044 del referido cuerpo de ley, manifestaba que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes. 31 LPRA sec. 2994 (derogado). Véase, *Rodríguez García v. UCA*, 200 DPR 929 (2018); *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014); *VDE Corporation v. F & R Contractors*, 180 DPR 1, 34 (2010). Tal es el caso de los contratos de fianza.

En específico, mediante el contrato de fianza una parte se obliga expresamente con otra a pagar o cumplir por el fiado, en caso de éste no hacerlo. Art. 1721 del Código Civil, 31 LPRA sec. 4871 (derogado). Así pues, dicho contrato le "proporciona al acreedor mayor probabilidad de ver satisfecho su interés, ya que se amplía su poder de agresión a un patrimonio distinto del origina[lmente] responsable".

---

[8] Si bien estamos conscientes que el 28 de noviembre de 2020 entró en vigor la Ley Núm. 55-2020 -- mediante la cual se adoptó el Código Civil de Puerto Rico de 2020 -- a la fecha del otorgamiento del contrato de fianza bajo estudio estaba vigente el Código Civil de 1930, 31 LPRA sec. 1 *et seq.*

*United Surety v. Registradora*, 192 DPR 187 (2015) (citando a J.L. Lacruz Berdejo, F.A. Sancho Rebullida y otros, *Elementos de Derecho Civil: Derecho de obligaciones*, 3ra ed., Barcelona, Ed. Bosch, 1995, T. II, V. 2, pág. 339).

En cuanto a los términos de la fianza, los mismos no se presumen, sino que deben ser expresos y no pueden extenderse a más de lo contenido en ellos. Art. 1726, *supra*. Consecuentemente, a las fiadoras no puede hacérseles responsables más allá de aquello a lo que se obligaron.[9] *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 511-513 (2010); *García v. The Commonwealth Ins. Co.*, 118 DPR 380, 392 (1987).

Por su parte, en lo que respecta a la naturaleza del contrato de fianza, el tratadista José Puig Brutau, en su obra *Fundamentos de Derecho Civil*, nos señala que:

> [l]a fianza implica la existencia de una obligación principal y de una obligación accesoria pactada para asegurar el cumplimiento de la primera. La obligación principal es aquella que existe entre acreedor y deudor. Este deudor es el "otro" por el cumplimiento de cuya obligación el fiador se ha obligado hacia el acreedor. La fianza aparece así como una obligación convenida entre acreedor y fiador para asegurar o garantizar el pago o cumplimiento de una obligación. J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T.2, Vol.2, págs. 587-588.

Cónsono con lo anterior, en el pasado hemos sentenciado que este contrato tiene tres características fundamentales, a saber: (1) la obligación contraída por la fianza es accesoria

---

[9] Como discutiremos más adelante, cuando se trata de una fianza legal -- tal como ocurre en el presente caso -- las fiadoras vienen obligadas a cumplir con las disposiciones contenidas en la ley que exige dicha fianza. Esto, independientemente se haya pactado en el contrato o no.

y subsidiaria a la del fiado; (2) es unilateral porque puede establecerse sin intervención del deudor, y aún del acreedor en cuyo favor se constituye, y (3) el fiador es persona distinta del fiado, ya que nadie puede ser fiador personalmente de sí mismo. *Sucn. María Resto v. Ortiz,* 157 DPR 803 (2002); *Caribe Lumber v. Inter-Am. Builders*, 101 DPR 458 (1973). Véase, además, Puig Brutau, *op cit.*, págs. 587-588.

En esa dirección, conviene señalar aquí que en nuestro ordenamiento jurídico se reconocen tres tipos de fianzas, éstas son: (1) la convencional; (2) la judicial; y (3) **la legal**. Art. 1722 del Código Civil, 31 LPRA sec. 4872 (derogado). La diferencia entre cada una de ellas estriba en el origen de la obligación de otorgar los referidos contratos. *Ortiz Rolón v. Armando Soler Auto Sales*, *Inc.*, 202 DPR 689 (2019) (citando a J. Alventosa del Río, *La fianza: ámbito de responsabilidad*, Granada, Ed. Comares, 1988, pág. 60.)

La fianza convencional es aquella que surge del acuerdo de las voluntades que preceden al contrato, mientras que las fianzas legales y judiciales son aquellas que la ley o la autoridad judicial exigen para afianzar alguna obligación en particular. *Ortiz Rolón v. Armando Soler Auto Sales*, *Inc.*, *supra.* **Es por lo anterior que las fianzas legales se rigen, en primera instancia, por la ley que las creó.** *Íd.*

Ahora bien, todo aquello que no haya sido contemplado por las disposiciones relativas a las fianzas legales, se regirá

por las disposiciones del Código Civil aplicables a la fianza convencional. *Íd.* Véase, además, *Sucn. María Resto v. Ortiz*, *supra*. Ello sin olvidar, claro está, que el contrato de fianza debe interpretarse de forma liberal, a favor de los terceros beneficiados, pero aun así no puede abstraerse de la verdadera intención de las partes. *United v. Villa*, 161 DPR 609, 616 (2004); *Sucn. María Resto v. Ortiz*, *supra*, pág. 811.

**En lo que a las fianzas legales se refiere**, este **Tribunal ha expresado que la ley que exige la fianza constituye parte de ésta, como si estuviera incorporada en su texto.** *Pueblo v. Peñagarícano*, 54 DPR 613, 617 (1939). Véase, además, *Ortiz Rolón v. Armando Soler Auto Sales*, *Inc.*, *supra.* De esta forma, se presume que la intención de las partes al pactar un contrato de fianza legal es cumplir con los requisitos de la ley o el reglamento que exige la fianza. *Íd.* Véase, también, *Montalvo & Comas Electric Corp. v. ELA*, 107 DPR 558, 562 (1978). Es decir, su interpretación debe ceñirse a dicho estatuto y a tenor con los propósitos del mismo. *Pueblo v. Peñagarícano*, *supra.* Siendo ello así "[n]o es necesario, pues, que en el documento de fianza, se especifiquen todas y cada una de las personas garantizadas por la misma, ya que dichas personas están debidamente descritas en las disposiciones de ley aplicable o en los términos del contrato garantizado". *Ortiz Rolón v. Armando Soler Auto Sales, Inc.*, *supra*; *Cristy & Sánchez v. ELA*, 84 DPR 234, 239 (1961).

B.

Establecido lo anterior, **y teniendo bien presente, como hemos dicho, que la interpretación del alcance de una fianza legal debe ceñirse al estatuto que la exige y a los propósitos del mismo**, conviene señalar aquí que en el Art. 2.14 de la Ley Núm. 22-2000, según enmendada -- conocida como Ley de Vehículos y Tránsito de Puerto Rico, 9 LPRA sec. 5001 *et seq.* -- se estableció como requisito a las personas que deseen dedicarse a la venta de vehículos de motor al detal con ánimo de lucro, obtener del Secretario del Departamento de Transportación y Obras Públicas (en adelante, "DTOP"), una licencia de concesionario de vehículos de motor, arrastres y semiarrastres. Para ello, -- y conforme a las necesidades de la seguridad pública --, la precitada ley faculta al mencionado Secretario a establecer mediante reglamentación los requisitos necesarios para la obtención y renovación de dichas licencias. Art. 2.14, *supra*.

De conformidad con lo anterior, el Secretario del DTOP promulgó el Reglamento para la Expedición de Licencia de Concesionario de Vehículos de Motor, Reglamento Núm. 6274 de 2 de enero de 2001. En el Art. VIII(A) del mencionado cuerpo reglamentario, se esbozan los requisitos que debe cumplir toda persona natural o jurídica con el fin de obtener la licencia de concesionario. En lo pertinente al caso que nos ocupa, el inciso (16) del Reglamento al que hemos hecho referencia exige lo siguiente:

> **[f]ianza mínima de cien mil dólares ($100,000.00) para el negocio principal y bajo la cual podrá incluirse la primera sucursal solicitada. La fianza cubrirá cualquier reclamación, entre otros, cheques no honrados por el Banco, pago de tablillas, multas, vicios ocultos y garantía.** (Énfasis suplido). Reglamento Núm. 6274, *supra*, Art. VIII, págs. 13-14.

A su vez, es menester señalar que el Art. X del precitado reglamento establece el trámite para la renovación de la licencia. A esos fines, expresa que el concesionario y distribuidor o representante autorizado cumplirá con varios requisitos, entre los cuales resalta que "[l]os concesionarios deberán radicar la solicitud con treinta (30) días de anticipación a la fecha de vencimiento cumpliendo con los incisos 1, 5, 6, 7, 10 y 13 al 18 del Artículo VIII(A) de este reglamento".[10]

Mientras que, el Art. X(C) establece que el Secretario del DTOP distribuirá la totalidad de las licencias de concesionarios autorizadas en forma proporcional por cada uno de los doce (12) meses del año, a fin de llevar a cabo dicha renovación. **Asimismo, se dispone que para años subsiguientes, la vigencia de dicha licencia será por un año contado a partir de la fecha de expedición.** Reglamento Núm. 6274, *supra*, Art. X(C). Por último, el Art. XVII autoriza al Secretario del DTOP a confiscar la fianza a la cual hemos hecho referencia, para satisfacer cualquier deuda o reclamación presentada por persona interesada. *Íd.* Art. XVII.

---

[10] Recordemos que el inciso (16) del Art. VIII (A), *supra*, exige una fianza mínima de cien mil dólares ($100,000.00) para el negocio principal.

Precisamente, la facultad de confiscación del mencionado Secretario es por el término de un (1) año, lo cual es compatible con la prestación anual de una nueva fianza. *Íd*.

C.

Dicho ello, y sobre el alcance de las fianzas legales, en *Sucn. María Resto v. Ortiz*, *supra*, este Tribunal tuvo la oportunidad de resolver si la fianza notarial prestada por el Colegio de Abogados y Abogadas de Puerto Rico (en adelante, "Colegio") a favor de cierto notario, -- para responder por las actuaciones de estos últimos en el ejercicio de su función notarial --, se limitaba a un máximo de veinte mil dólares ($20,000.00), sin importar el año en que se hayan presentado las reclamaciones y hayan ocurrido los hechos.

Al disponer del referido caso, esta Curia señaló que la relación contractual entre el notario y el Colegio era una de fiador solidario-fiado. Así pues, producto de la mencionada relación contractual, concluimos que el notario en cuestión pagó una prima anual con el fin de renovar el contrato de fianza notarial con el Colegio cada año. Al evaluar el alcance de la referida garantía personal, -- y teniendo en mente que se trataba de una fianza legal, la cual se debía interpretar en consideración al estatuto que la exige y los propósitos del mismo, en este caso la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.* --, sentenciamos que la fianza notarial respondería hasta un límite de veinte mil dólares

($20,000.00) por cada año en que ocurrieron los hechos que dieron base a la reclamación; entiéndase, las actuaciones u omisiones negligentes en las que el notario o notaria incurrió. Algo similar sucede en el caso ante nos.

De otra parte, recientemente este Tribunal resolvió el caso *Ortiz Rolón v. Armando Soler Auto Sales*, *supra*, uno que también se dio en el contexto de las fianzas legales requeridas para la expedición de las licencias de concesionarios de vehículos de motor. En específico, en el mencionado caso nos correspondía determinar si este tipo de fianzas respondía ante una institución financiera o solo ante aquellos consumidores a quienes el concesionario les vendiera un vehículo de motor.

En lo pertinente al caso que nos ocupa, en *Ortiz Rolón v. Armando Soler Auto Sales*, *supra*, razonamos que la fianza de un concesionario de vehículos de motor -- por su naturaleza -- incorpora los requisitos que le impone la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, y el Reglamento Núm. 6274, *supra*. Lo anterior también lo hicimos luego de discutir la normativa relativa a las fianzas legales *vis a vis* las fianzas convencionales o producto de la voluntad de las partes. Tal razonamiento, a todas luces, es aplicable a la controversia que nos ocupa.

De igual forma, es menester señalar que en el precitado caso resaltamos que el Reglamento Núm. 6274, *supra*, "[n]o incluye restricción alguna sobre quien puede reclamar contra la fianza, salvo que sea una parte interesada". *Ortiz Rolón*

*v. Armando Soler Auto Sales*, *Inc.*, *supra*, págs. 706-07. Consecuentemente, rechazamos la contención de la recurrida en dicho caso -- la fiadora MAPFRE -- en cuanto a que el contrato de fianza era claro en estipular que solo podían reclamar contra ella las personas a quienes Armando Soler Auto Sales vendió vehículos de motor; lo cual, a su juicio, excluía a instituciones financieras como Scotiabank. *Íd.* Asimismo, rechazamos el argumento de MAPFRE en torno a que la fianza fue avalada por el DTOP y, por tanto, se debía presumir que el contrato cumplía con las disposiciones reglamentarias aplicables. *Íd.*

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias ante nuestra consideración.

III.

Como mencionamos anteriormente, en el presente caso, Popular Auto aduce, en síntesis, que el Tribunal de Apelaciones erró al concluir que la fianza aquí en controversia debía interpretarse conforme a la voluntad de las partes y no según las exigencias de la ley que la requiere. Así, sostiene que el *dealer bond* emitido por Universal a favor de Empresas Maseda responde por la cantidad de cien mil dólares ($100,000.00) anuales, por lo que dicha suma no constituye un fondo único por todos los años en que la fianza estuvo vigente. Le asiste la razón.

De entrada, es preciso señalar que la garantía personal objeto del presente litigio es una fianza legal. Esto, pues,

la misma se otorga con el fin de cumplir con las disposiciones de la Ley de Vehículos y Tránsito, *supra*, y el Reglamento 6274 del DTOP, *supra*, y, así, poder obtener la licencia como concesionario de automóviles.

Al tratarse de una fianza legal, los tribunales debemos asegurarnos de que éstas cumplan con todas las exigencias de las disposiciones legales que las crean. **Ello, ya que la ley constituye parte del contrato de fianza como si estuviera incorporada al mismo.**

Dicho ello, según mencionamos previamente, en el contrato de fianza bajo estudio se estipuló que -- cuando los actos u omisiones fraudulentos o engañosos de Empresas Maseda ocasionaran una pérdida de dinero -- Universal respondería a cualquier comprador, vendedor, institución financiera o agencia gubernamental afectada, por la cantidad de cien mil dólares ($100,000.00) y que la responsabilidad agregada de ésta, bajo ninguna circunstancia, excedería dicha cantidad. Posteriormente, como ya discutimos, en cada uno de los certificados de continuación otorgados entre Universal y Empresas Maseda se pactó que "[t]his continuation is executed upon the express condition that the Company liability shall not be cumulative and shall be limited at all times by the amount of the penalty stated in the bond".

En otras palabras, en los referidos certificados de continuación se plasmó que los mismos se emitieron bajo la condición expresa de que la responsabilidad de Universal no se acumularía sino que se limitaría -- en todo momento -- a

la cantidad de cien mil dólares ($100,000.00). Dichos certificados, los cuales tenían términos de vigencia distintos, y conforme a lo dispuesto en la Ley Núm. 22-2000, *supra*, y el Reglamento Núm. 6274, *supra*, eran expedidas anualmente luego del pago de una nueva prima de mil dólares ($1,000.00)

**Así pues, de una detenida y cuidadosa lectura del contrato de fianza aquí en controversia, <u>en armonía con las disposiciones de ley aplicables</u>, claramente se desprende que la fianza legal ante nuestra consideración responde hasta un máximo de cien mil dólares ($100,000.00) <u>anuales</u>, por las reclamaciones correspondientes a los distintos periodos en que la misma estuvo vigente y para los cuales se emitieron certificados de continuación. Es decir, la fianza emitida por Universal responderá hasta un límite de cien mil dólares ($100,000.00) por cada año en que ocurrieron los hechos que dieron base a la reclamación. No constituye, pues, un fondo único.**[11]

Y es que resolver lo contrario, equivaldría a permitir que, una vez se haga algún desembolso conforme a la fianza a la que hemos hecho referencia, el concesionario de vehículos

---

[11] Precisa resaltar que el contrato de fianza bajo estudio garantiza que, por cada año, la cantidad máxima de responsabilidad de Universal será de cien mil dólares ($100,000.00) y que el dinero no utilizado de dicha suma, no se acumula para el próximo año. A modo de ejemplo, si durante el periodo 2010-2011 Universal desembolsó veinte mil dólares ($20,000.00) en virtud de alguna reclamación en contra de Empresas Maseda, la renovación de la fianza para el periodo 2011-2012 será de cien mil dólares ($100,000.00) y no ciento ochenta mil dólares ($180,000.00). La anterior conclusión se encuentra respaldada por el hecho de que cada certificado de continuación es expedido bajo el pago de una nueva prima de mil dólares ($1,000.00) y bajo un nuevo término de vigencia.

de motor tenga descubierta la totalidad de la misma para el año siguiente en que ésta se renueve, por estar por debajo de los cien mil dólares ($100,000.00) que exige el DTOP. **Ello, sin lugar a duda, estaría en contravención con las exigencias del Reglamento Núm. 6274, *supra*, y con la política pública que dicha reglamentación custodia.**

Siendo ello así, somos del criterio que el Tribunal de Apelaciones erró al concluir que el límite de responsabilidad de cien mil dólares ($100,000.00) contenido en la fianza emitida por Universal a favor de Empresas Maseda, constituye un fondo único. De igual forma, incidió al ordenar al Tribunal de Primera Instancia constatar únicamente que las reclamaciones del caso de autos cumplan con lo dispuesto en el contrato. Recordemos que, conforme al Reglamento Núm. 6274, la fianza cubrirá cualquier reclamación, entre otros, cheques no honrados por el Banco, pago de tablillas, multas, vicios ocultos y garantía por lo que no se limita a reclamaciones por fraude o engaño. No obstante, el foro apelativo intermedio actuó correctamente al determinar que la fianza del presente caso sí le responde a Popular Auto.

IV.

Por los fundamentos antes expuestos, se revoca en parte la *Sentencia* del Tribunal de Apelaciones, se reinstala la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia y se devuelve el caso a ese foro para la continuación de los procedimientos de forma cónsona con lo

resuelto en esta *Opinión.*

Se dictará Sentencia de conformidad.


                                        Ángel Colón Pérez
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Universal Insurance Company

     Recurrida

       v.

Popular Auto, LLC

     Peticionarios

Luis E. Blanco, Germania
Silverio, Rafael Martínez
y otros

     Recurridos

CC-2019-847    *Certiorari*


SENTENCIA


En San Juan, Puerto Rico a 28 de mayo de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca en parte la Sentencia del Tribunal de Apelaciones, se reinstala la Sentencia Sumaria Parcial emitida por el Tribunal de Primera Instancia y se devuelve el caso a ese foro para la continuación de los procedimientos de forma cónsona con lo resuelto en esta Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo